IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| EVELYN CEPEDA, on behalf of herself and others similarly situated, | : : : | 2:22-cv-01887-MAK |
| Plaintiff, | : | |
| v. | : : | |
| RDS HOME CARE INC., | : : | |
| Defendant. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**<u>UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT</u>**

Plaintiff Evelyn Cepeda ("Cepeda"), Opt-Ins Franklin Santana ("Santana") and Guillermina Bautista (Bautista"), and Defendant RDS Home Care Inc. ("Defendant") have settled this Fair Labor Standards Act ("FLSA") lawsuit for $25,000 per the accompanying Settlement Agreement and Release of Claims ("Agreement"). *See* ECF No. 23-1.[1] The undersigned counsel agree with Judge Wolson that judicial approval of *non-collective* FLSA lawsuits is not required. *See Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, 2022 U.S. Dist. LEXIS 122552 (E.D. Pa. July 12, 2022). However, because the instant lawsuit is a collective action – albeit an extremely small one – judicial review is warranted in the absence of

---

[1] The Court should be alerted that Bautista has not signed the settlement agreement as of today. *See* Agreement (ECF No. 23-1). FLSA opt-ins generally do not sign settlement agreements because, in joining the action, they agree to be bound by the Court's decisions regarding all matters, including the fairness of any settlement. *See, e.g.*, ECF No. 19 (Bautista consent form); *see also Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 230 (3d Cir. 2016) (characterizing FLSA opt-ins as "mere passive observers" who, in exchange for the benefits of collective litigation, "agreed to set aside the individual authority to litigate"). Notwithstanding, because this action covers only three individuals, plaintiff's counsel decided to include in the Agreement individual signature lines for Opt-Ins Santana and Bautista. Plaintiff's counsel are working diligently to contact Bautista and respectfully suggest that, if the Court approves the settlement before she signs the Agreement, then her settlement proceeds should be held in plaintiff's counsel's escrow account until she signs the agreement.

Third Circuit authority to the contrary. Cepeda submits that approval is warranted for the reasons described herein:

## A. BACKGROUND

Defendant owns and operates a business that provides "home care" services to clients in and around Philadelphia. *See* Stipulation of Undisputed Facts ("SUD") (ECF No. 13) at ¶ 3. Such "home care" services include, *inter alia*, the following: "companionship," "household management," "incontinence care," "transfer assistance," "respite care," "communication," and "personal care." *Id.* Defendant employs workers who provide these home care services to its clients. *Id.* at ¶ 5.

Cepeda was employed by Defendant as a home care worker from approximately January 2021 until May 2022, *see* SUD (ECF No. 13) at ¶ 6, and earned $13/hour, *see* Complaint (ECF No. 1) at ¶ 11. Cepeda occasionally provided home care services to two clients in a single week. *See* SUD (ECF No. 13) at ¶ 10. On such occasions Defendant limited its payment of overtime wages to those hours in which Cepeda's work for a *single client* exceeded 40 hours. *See* Complaint (ECF No. 1) at ¶ 16.

In May 2022, Cepeda commenced this class/collective action against Defendant, seeking all available relief under the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"). *See* Complaint (ECF No. 1). Cepeda generally alleged that "Defendant's business practice of failing to pay overtime wages based on the *total combined* weekly work hours of [Cepeda] and other home care workers" violated the FLSA. *Id.* at ¶ 18 (citing 29 C.F.R. §§778.103).

In October 2022, Santana opted-in to the action by filing a consent form. *See* ECF No. 14. Around one week later, the Court entered a stipulated order "conditionally certifying" a putative FLSA collective comprised of "[a]ll individuals employed by Defendant who (i)

provided home care services to more than one client in a single week during any week since May 13, 2019 and (ii) were not contemporaneously paid overtime wages based on the total combined hours worked on behalf of all clients." ECF No. 16 at ¶ 1. The putative collective numbered 12 individuals (excluding Cepeda and Santana).

In exchange for conditional certification, Cepeda agreed to dismiss the class action claims under the PMWA.[2] *See Id.* at ¶ 6. However, anyone joining the collective action retained the right to assert the PMWA claim,[3] with the PMWA's three-year limitations period tolled as of Cepeda's May 13, 2022 commencement of this lawsuit. *See id.* Notice ensued, and Bautista joined the action. *See* ECF No. 19.

Thereafter, Defendant produced and Plaintiff's counsel carefully analyzed the payroll data applicable to Cepeda, Santana, and Bautista (together "the employees"). This data indicated that Defendant's practice of failing to pay overtime wages based on the employees' *total combined* work hours during weeks in which two clients were served resulted in the employees being *contemporaneously* denied overtime wages during the relevant post-May 2019 time period. However, the data also confirmed that, prior to Cepeda's commencement of this lawsuit, Defendant began making "make-up" payments to account for such unpaid overtime wages.[4] In

---

[2]  This was not much of a sacrifice since Federal Rue of Civil Procedure 23(a)(1)'s "numerosity" requirement could not be satisfied.
[3]  This provision is consistent with the notion that individuals who opt-in to an FLSA collective action join "the action as a whole." *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003); *accord Woodward v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 190 n. 10 (M.D. Pa. 2008); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 n.40 (W.D. Tex. 2003).
[4]  In this regard, the data was consistent with defense counsel's representations to the Court during the August 2022 case management conference.

this regard, the Court is referred to the table below:

| Name | Contemporaneously Unpaid Overtime Wages | Make-Up Payments Received | Overtime Wages Still Owed |
|---|---|---|---|
| Cepeda | $2,275 | $1,375 | $900 |
| Santana | $13,247 | $12,747 | $500 |
| Bautista | $3,449 | $0 | $3,449 |
| **Total** | **$18,971** | **$14,122** | **$4,849** |

Having analyzed the pertinent payroll data, the parties attended a settlement conference with Magistrate Judge Hey on December 29, 2022. Settlement was reached.

As indicated in the Agreement, the settlement requires Defendant to pay a total of $25,000. If the Court approves the requested $8,734 in attorney's fees/expenses, the remainder of the settlement fund will be distributed as follows: **(i)** $3,175.00 to Cepeda; **(ii)** $7,754.00 to Santana; **(iii)** and $5,337.00 to Bautista. *See* Agreement (ECF No. 23-1) at ¶ 4. In exchange for these payments, the employees enter into a limited release covering all claims "either asserted in or reasonably related to the Action." *Id.* at ¶ 5. Additionally, the employees agree that they "will not contact any media representatives or otherwise post information on social media" concerning the settlement. *Id.* at ¶ 6.

**B.  ARGUMENT**

Cepeda submits that approval of the settlement is warranted for the following reasons:

    **1.  The Settlement May Be Approved in a Single Step.**

During the August 2022 case management conference, the Court expressed an interest in whether the approval of an FLSA "collective action" settlement must follow the three-step approval process (preliminary approval followed by notice to the class members followed by a final approval hearing) applicable to "class action" settlements under Federal Rule of Civil Procedure 23. Cepeda submits that Rule 23's procedures do ***not*** apply. In this regard, our Court

of Appeals recently observed:

> Rule 23 also contains important post-certification protections that are notably absent in [FLSA] § 216(b). Because absent class members are not present in court, the court is authorized to issue various orders "to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B). The FLSA does not provide any analogous authority. Rule 23 also establishes a rigorous system surrounding the settlement of class actions in which absent class members are notified and provided an opportunity to opt-out and to object. Fed. R. Civ. P. 23(e). And before approval of the settlement, the court must conduct a hearing and find "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). **Once again, FLSA collective actions contain none of these protections.** *See* 29 U.S.C. § 216(b); McLaughlin on Class Actions § 2:16 ("Unlike class actions, which cannot be settled without notice to absent class members under Rule 23(e), a collective action may be settled without notice to absentee members.").

*Fischer v. Federal Express Corp.*, 42 F.4th 366, 377 (3rd Cir. 2022) (emphasis supplied); *see also Haskett v. Uber Technologies, Inc.*, 780 Fed. Appx. 25, 27 (4th Cir. 2019) ("Unlike Rule 23, section 216(b) does not require a district court to notify potential claimants about a proposed settlement.").[5] Consistent with the above, this Court often reviews FLSA collective settlements in a single step. *See*, *e.g.*, *Goncalves v. AJC Construction Inc.*, 2022 WL 2985636, 2022 U.S. Dist. LEXIS 133995 (E.D. Pa. July 28, 2022); *Gravely v. PetroChoice, LLC*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746 (E.D. Pa. June 28, 2022); *Travis v. Asociacion Puertorriquenos en Marcha, Inc.*, 2020 WL 4059715, 2020 U.S. Dist. LEXIS 126762 (E.D. Pa. July 20, 2020); *Ogunlana v. Atlantic Diagnostic Laboratories LLC*, 2020 WL 1531846, 2020 U.S. Dist. LEXIS 55619 (E.D. Pa. Mar. 31, 2020); *Williams v. Bethanna*, 2019 U.S. Dist. LEXIS 7350 (E.D. Pa. Jan. 15, 2019); *Santos v. El Gallito Mexican Bakery II LLC*, 2018 U.S. Dist. LEXIS 42363 (E.D. Pa. Mar. 12, 2018).

---

[5] *Accord Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 U.S. Dist. LEXIS 87928, *2-3 (D. Mass. June 8, 2017) (endorsing one-step approval of collective settlements); *Koszyk v. Country Financial*, 2016 WL 5109196, 2016 U.S. Dist. LEXIS 126893, *2-3 (N.D. Ill. Sept. 16, 2016) (same); *Prena v. BMO Financial Corp.*, 2015 WL 2344949, 2015 U.S. Dist. LEXIS 65474, *1-2 (N.D. Ill. May 15, 2015) (same).

### 2. Approval of the Settlement is Warranted.

An FLSA settlement warrants approval when it constitutes "a reasonable compromise of contested issues and not merely a waiver of statutory rights caused by the employer's overreaching." *Gravely*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *3. "The agreement must (1) settle a bona fide dispute, (2) be fair and reasonable to the employees and (3) further the FLSA's enforcement in the workplace." *Id.* Here, all three criteria are satisfied:

#### a. The settlement resolves a *bona fide* FLSA dispute.

A *bona fide* dispute to exist "when there are factual issues between the parties such as the amount of back wages." *Gravely*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *3. Such is the case here. Defendant has retained able defense counsel and filed an answer denying liability and asserting various affirmative defenses. *See generally* Answer (ECF No. 6).

#### b. The Settlement "Furthers the FLSA's Implementation."

Generally speaking, settlements further the FLSA's implementation where they lack "overly burdensome confidentiality agreements, overbroad release language, or sealed filings." *Travis*, 2020 WL 4059715, 2020 U.S. Dist. LEXIS 126762, at *6 (internal quotations omitted). The instant settlement avoids such pitfalls. It is publicly filed, *see* ECF No. 23-1, and the "confidentiality" provision is narrowly tailored to merely prevent the employees and undersigned counsel from publicizing the settlement to the news media or via social media. *See* 23-1 at p. 2, ¶ 6. This type of limited confidentiality provision does not frustrate the FLSA's purpose. *See, e.g.*, *Ogunlana*, 2020 WL 1531846, 2020 U.S. Dist. LEXIS 55619, at *13-14.

Moreover, the release is strictly limited to legal claims "asserted in or reasonably related to the Action." Agreement (Doc 23-1) at ¶ 5(a). Such limited releases do not frustrate the FLSA. *See, e.g.*, *Travis*, 2020 WL 4059715, 2020 U.S. Dist. LEXIS 126762, at *6.

### c. The Settlement is "Fair and Reasonable."

Finally, the settlement is "fair and reasonable." As discussed at pages 3-4 *supra*, while the three employees' *contemporaneous* unpaid overtime wages totaled $18,971, Defendant subsequently mitigated these damages by paying the employees a total of $14,122. That leaves an outstanding balance of only $4,849 in unpaid overtime wages. As indicated below, each employee's settlement payment (after reductions for attorney's fees and expenses) significantly *exceeds* his/her outstanding balance of unpaid overtime wages:

| Name | Overtime Wages Still Owed After Defendant's Make-Up Payments | Settlement Recovery |
|---|---|---|
| Cepeda | $900 | $3,175 |
| Santana | $500 | $7,754 |
| Bautista | $3,449 | $5,337 |
| **Total** | **$4,849** | **$16,266** |

The FLSA also permits prevailing plaintiffs to recover liquidated damages in amounts equaling their unpaid overtime wages. *See* 29 U.S.C. §§ 216(b), 260. However, Defendant could avoid liquidated damages by proving "that his failure to obey the [FLSA] was both in good faith and predicated on such reasonable grounds that it would be unfair to impose upon him more than a compensatory burden." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121 (3d Cir. 1984).

Where, as here, an employer has mitigated the alleged unpaid overtime wages by unilaterally making "make-up" payments to employees, it is unclear whether liquidated damages should be based on the contemporaneously unpaid wages or on the unpaid wages remaining after the employer's mitigation efforts. If this case proceeded to trial, the parties would sharply disagree regarding this interesting issue. Defendant would argue that liquidated damages should be limited to $4,849, which is the total amount of unpaid overtime wages remaining after

Defendant's "make-up" payments. If Defendant won this argument, each employee would recover an amount that is significantly **_less than_** his/her settlement payment.

The employees would argue that liquidated damages could total $18,971, which is the sum of their unpaid overtime wages *before* Defendant's "make-up" payments. *See* pages 3-4 *supra*. The table below shows how each employee's settlement payment (after reductions for attorney's fees and expenses) compares to the "home-run" scenario in which they both win at trial *and* convince the Court to award liquidated damages based on the contemporaneously (*i.e.* unmitigated) unpaid overtime wages:

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|
| Name | Contemporaneously Unpaid Overtime Wages | Make-Up Payments Received | Overtime Wages Still Owed | Liquidated Damages Based on Contemporaneously Unpaid Overtime Wages | "Home-Run" Damages (Column 4 + Column 5) |
| Cepeda | $2,275 | $1,375 | $900 | $2,275 | $3,175 |
| Santana | $13,247 | $12,747 | $500 | $13,247 | $13,747 |
| Bautista | $3,449 | $0 | $3,449 | $3,449 | $6,898 |

In light of the above, **Santana's** $7,754 settlement payment represents: (i) 100% of his Overtime Wages Sill Owed *plus* (ii) 54.75%[6] of his maximum available liquidated damages. Likewise, **Bautista's** $5,337 settlement payment represents: (i) 100% of her Overtime Wages Sill Owed *plus* (ii) 54.75%[7] of her maximum available liquidated damages. Finally, **Cepeda's** $3,175 settlement payment represents: (i) 100% of her Overtime Wages Sill Owed *plus* (ii) 100%[8] of her maximum available liquidated damages.[9]

---

[6] ($7,754 *minus* $500) / $13,247.
[7] ($5,337 *minus* $3,449) / $3,449.
[8] ($3,175 *minus* $900) / $2,275.
[9] Cepeda seeks a $1,245 service award, which coincides with the amount necessary to enable her to recover 100% (rather than 54.75%) of her maximum potential liquidated damages. In class/collective litigation, service award payments "compensate named plaintiffs for the services

In sum, the above payments are "fair and reasonable."

### d. Approval of the Attorney's Fees/Expenses is Warranted.

Finally, courts reviewing FLSA settlements must ensure that the attorney's fees and expenses paid to counsel are reasonable. *See*, *e.g.*, *Gravely* 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *4-5; *see also* page 5 *supra* (citing cases). Here, the settlement contemplates a payment to Winebrake & Santillo, LLC ("W&S") of $8,734 for all attorney's fees and expenses. *See* (Agreement) ECF No. 23-1 at ¶ 6. After reducing this amount by the $402 federal court filing fee incurred by W&S, *see* Declaration of Peter Winebrake ("Winebrake Dcl.") (ECF No. 23-2) at ¶ 17, the requested attorney's fee constitutes approximately 33% of the $25,000 settlement fund. This fee falls well within the range of fees approved by federal judges in other wage and hour settlements. *See*, *e.g.*, *Goncalves*, 2022 WL 2985636, 2022 U.S. Dist. LEXIS 133995, at *9-10 (fee of "slightly less than 36 percent of the total recovery . . . is a reasonable amount in FLSA cases"); *Gravely* 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *5 (35% fee "in line with fee awards by courts in the Third Circuit"). Moreover, as explained in the accompanying declaration, W&S's fee recovery falls well ***below*** the firm's fee lodestar. *See* Winebrake Dcl. (ECF No. 23-2) at ¶ 16. This further demonstrates the fee's reasonableness.

---

they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011). Service awards "are particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005); *accord Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, 2019 U.S. Dist. LEXIS 144929, *26 (E.D. Pa. Aug. 26, 2019). Here, the requested service award is warranted. Throughout this litigation, Cepeda has been a diligent advocate for herself and others. She has been in regular contact with the undersigned counsel, has gathered and produced documents, has provided counsel with valuable information, and has supported a settlement that pays her *less* than Santana and Bautista.

## C.  CONCLUSION

For all the above reasons, Cepeda asks the Court to grant this motion and approve the settlement of this action.

Date:  January 23, 2023

Respectfully,

_____
Peter Winebrake
Michelle L. Tolodziecki
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491